UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WEIS BUILDERS, INC.<br><br>Plaintiff, Counter-Defendant,<br><br>v.<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL UNION NO. 150<br><br>Defendant, Counter-Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:15-cv-2619 |

**UNION'S ANSWER AND COUNTERCLAIM**

Defendant/Counter-Plaintiff, INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL UNION NO. 150 answers Plaintiff/Counter-Defendant Weis Builders, Inc.'s ("Weis Builders") Complaint to Vacate Joint Grievance Committee Award and for Declaratory Judgment as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 185, 28 U.S.C. §§ 2201 and 2202, and 28 U.S.C. § 1331.

**ANSWER: Local 150 admits the allegations contained in paragraph 1.**

2. Venue is proper in this District pursuant to 29 U.S.C. § 185(a) and (c), as well as 28 U.S.C. § 1391(b) because Defendant resides within the jurisdiction of this Court and all of the events giving rise to the claim occurred within this jurisdiction of the Court.

**ANSWER: Local 150 admits the allegations contained in paragraph 2.**

**PARTIES**

3. Weis Builders is a Minnesota corporation with its headquarters and principal place of business in Minneapolis, Minnesota. Weis Builders provides construction services and delivery methods throughout the country, including the Chicagoland area. Weis Builders is an employer within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2), and engaged in

an industry affecting commerce within the meaning of Section 2(7) of the LMRA, 29 U.S.C. § 152(7).

**ANSWER: Local 150 admits the allegations contained in paragraph 3.**

4. Local 150 is a labor organization primarily representing operating engineers who work as equipment operators within the construction industry. Local 150 is a labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C. § 152(5), and engaged in an industry affecting commerce within the meaning of Section 2(7) of the LMRA, 29 U.S.C. § 152(7).

**ANSWER: Local 150 admits the allegations contained in paragraph 4.**

**FACTS**

5. On or about January 31, 2000, pursuant to a Memorandum of Agreement ("MOU") executed on August 14, 2000, Weis Builders became a signatory to the Heavy Highway and Underground Agreement ("HHU Agreement") then in effect between Local 150 and the Mid-America Regional Bargaining Association ("MARBA") and its successor agreements. A true and correct copy of the MOU is attached hereto as Exhibit A.

**ANSWER: Local 150 admits the allegations contained in paragraph 5.**

6. By December 2008, Weis Builders had not employed any operating engineers and, since that time, Weis Builders has not employed any person to perform work under the HHU Agreement.

**ANSWER: Local 150 denies the allegations contained in paragraph 6.**

7. It is well established that the National Labor Relations Board ("NLRB") will not require an employer to bargain in a unit consisting of only one (or no) employee(s). Both the Seventh Circuit Court of Appeals and NLRB case law establish than an employer can lawfully terminate its labor agreement with a union mid-term when the employer employs one or fewer bargaining unit employees on a permanent basis (the "one-person unit principle").

**ANSWER: Local 150 admits that paragraph 7 generally recites the law of the Seventh Circuit and NLRB, and further states that the Seventh Circuit and NLRB look to more than simply whether an employer employs one or fewer bargaining unit employees on a permanent basis, such as the history of employing one or fewer bargaining unit employees or the stability of the unit. Further stating, Local 150 denies Weis Builders met the standard of the NLRB or Seventh Circuit.**

8. On December 4, 2008, General Counsel for Weis Builders, Mr. Leonard L. Burridge ("Mr. Burridge"), issued notice to Local 150 terminating the HHU Agreement then in effect and the MOU pursuant to the one-person unit principle because Weis Builders had not employed operating engineers for several years and had no intention of hiring employees to perform work within the scope of work covered by the HHU Agreement ("Notice of Termination"). The HHU Agreement then in effect was for the period from June 1, 2007 through May 31, 2010. A true and accurate copy of the Notice of Termination dated December 4, 2008 is attached hereto as Exhibit B.

**ANSWER: Local 150 admits that Mr. Burridge sent a letter to Local 150 on December 4, 2008 and that a true and accurate copy of said letter is attached. Local 150 admits that the HHU Agreement in effect at the time of the letter was for the period from June 1, 2007 through May 31, 2010. Local 150 denies each and every other allegation contained in paragraph 8. Local 150 states further that the purported termination notice was untimely.**

9. On January 7, 2009, General Counsel for Local 150, Mr. Dale D. Pierson ("Mr. Pierson"), responded to the Notice of Termination stating "[t]he relevant inquiry is whether any Company employees perform work covered by the [HHU Agreement]." A true and accurate copy of the letter dated January 7, 2009 is attached hereto as Exhibit C.

**ANSWER: Local 150 admits that on January 7, 2009, Mr. Pierson sent a letter to Weis Builders stating "[t]he relevant inquiry is whether any Company employees perform work covered by the [HHU Agreement]" and that a true and accurate copy is attached. Local 150 denies Weis Builders properly terminated the HHU Agreement and each and every other allegation contained in paragraph 9.**

10. On January 21, 2009, Mr. Burridge responded to Mr. Pierson reiterating Weis Builder's termination of the HHU Agreement and MOU effective December 4, 2008 (the date of the Notice of Termination) on the grounds that Weis Builders had not employed any employees under those agreements and had no intention of hiring operating engineers to perform work within the scope of work covered by the HHU Agreement. A true and accurate copy of the letter dated January 21, 2009 is attached hereto as Exhibit D.

**ANSWER: Local 150 admits that Mr. Burridge responded to Mr. Pierson and that a true and accurate copy is attached, but denies each and every other allegation contained in paragraph 10.**

11. On February 12, 2009, Mr. Pierson responded to Mr. Burridge with a letter stating "the Agreement between Weis Builders and Local 150 will remain in effect until May 31, 2010….the Company has no option to terminate the Agreement at this time." A true and accurate copy of the letter dated February 12, 2009 is attached hereto as Exhibit E.

**ANSWER: Local 150 admits the allegations contained in paragraph 11.**

12. Local 150 did not file an unfair labor practice charge with the NLRB contesting Weis Builders' mid-term termination of the HHU Agreement and/or the MOU.

**ANSWER: Local 150 admits it did not file an unfair labor practice charge with the NLRB regarding Weiss Builders' unlawful midterm attempt to terminate the HHU Agreement and/or the MOU, and denies Weis Builders lawfully terminated the HHU Agreement and/or the MOU.**

13. The NLRB charge process provides the exclusive mechanism for asserting that an employer has unlawfully withdrawn recognition of a union and/or unlawfully terminated a collective bargaining agreement. Charges not filed within 6 months of the alleged unlawful act are forever waived under Section 10(b) of the LMRA. *See* 29 U.S.C. § 160(b).

**ANSWER: Local 150 denies the allegations contained in paragraph 13.**

14. Subsequent to the exchange of correspondence recited in paragraphs 8-11 above, on information and belief, Local 150 and MARBA entered into new HHU Agreements in 2010 and in 2013. Weis Builders did not and has not become signatory to those agreements, or to any other agreement, with Local 150 following its termination of the HHU Agreement and MOU in 2008 recited above.

**ANSWER: Local 150 admits, subject to Local 150's responses to paragraphs 8-11, that subsequent to the exchange of correspondence recited in paragraphs 8-11, and MARBA entered into a new HHU Agreement in 2010, but denies each and every other allegation in paragraph 14.**

15. By letter dated November 10, 2014, Local 150 presented a grievance against Weis Builders under the current HHU Agreement between MARBA and Local 150, alleging, *interalia*, Weis Builders had violated Article I, Section 4 – Subcontractor and Article I, Section 7 – Scope of Work of that agreement on various dates in October of 2014 (the "Grievance"). A true and accurate copy of the Grievance is attached as Exhibit F.

**ANSWER: Local 150 admits the allegations contained in paragraph 15.**

16. By letter dated November 10, 2014, addressed to James Sweeney, President of Local 150, Weis Builders objected to the Grievance on the grounds that Weis Builders was not subject to the jurisdiction of the JGC because it had terminated its HHU Agreement with Local 150 in 2008 pursuant to the one-person unit principle. A true and accurate copy of the letter dated November 10, 2014 is attached hereto as Exhibit G.

**ANSWER: Local 150 admits Weis Builders sent Local 150 a letter dated November 10, 2014 and a true and accurate copy of said letter is attached, but denies each and every other allegation contained in paragraph 16.**

17. The Grievance was submitted to the Joint Grievance Committee ("JGC") established under the MARBA-Local 150 HHU Agreement and set for a hearing on January 21, 2015. A true and accurate copy of the notice of hearing is attached as Exhibit H.

**ANSWER: Local 150 admits the allegations contained in paragraph 17.**

18. A second letter, dated January 5, 2015, was sent to Local 150, and to the employer members of the JGC, protesting the scheduling of the hearing on the grounds that Weis Builders was not bound to any Local 150 agreement and not subject to the jurisdiction of the JGC. Accordingly, Weis Builders did not appear at the hearing before the JGC. A true and accurate copy of the January 5, 2015 letter is attached hereto as Exhibit I.

**ANSWER: Local 150 admits the allegations contained in paragraph 18.**

19. Following the hearing on the Grievance, the JGC issued a Decision & Award ("Award"), dated January 21, 2015, granting the grievance and directing Weis Builders to pay the Local 150 Assistance Fund the sum of $10,908.92. A true and accurate copy of the JGC Award dated January 21, 2015 is attached hereto as Exhibit J.

**ANSWER: Local 150 admits the allegations contained in paragraph 19.**

20. On February 11, 2015, Local 150 sent a letter to Weis Builders demanding payment of the Award within 10 calendar days; threatening legal action and "economic remedies including the right to strike and picket until such failure to pay [the Award] has been corrected"; and stating that the matter "will be forwarded to [Local 150's] attorneys and that "[a]ll Legal fees

and court costs will be [Weis Builders'] responsibility." A true and correct copy of the February 11, 2015 letter is attached as Exhibit K.

**ANSWER: Local 150 admits the allegations contained in paragraph 20.**

21. Thereafter, Counsel for Weis Builders communicated with Mr. Pierson regarding the Award and explained in a letter to Mr. Pierson dated February 18, 2015, including references to legal authorities, that Weis Builders is not a party to the HHU Agreement under which the Grievance was filed and heard by the JGC, and, therefore, is not bound by the Award. A true and accurate copy of the February 18, 2015 letter is attached hereto as Exhibit I.

**ANSWER: Local 150 admits counsel for Weis Builders communicated with Mr. Pierson regarding the Award in a letter to Mr. Pierson dated February 18, 2015, including references to inapposite legal authorities, but denies each and every other allegation contained in paragraph 21.**

22. Counsel's letter of February 18th further informed Mr. Pierson that Weis Builders had authorized filing a lawsuit to have the Award "declared null and void"; requested that Mr. Pierson "provide Weis Builders the necessary assurances that the Union will not seek to enforce the JGC decision and will recognize the prior termination of the parties' relationship"; and further informed Mr. Pierson that in the absence of such assurances "we will file the lawsuit on Weis Builders behalf and, as appropriate, seek reimbursement for costs and fees for the prosecution of its rights."

**ANSWER: Local 150 admits the allegations contained in paragraph 22. Local 150 states further that its counsel assured counsel for Weis Builders that its position was meritless.**

23. On or about March 3, 2015, Mr. Pierson informed Weis Builders' Counsel that the Union's position that the JGC Award and the current HHU Agreement are binding on Weis Builders had not changed.

**ANSWER: Local 150 admits the allegations contained in paragraph 23.**

24. An actual controversy exists between Local 150 and Weis Builders as there is an active and current dispute between them as to whether:

(a) Weis Builders is or is not bound to the current MARBA-Local150 HHU Agreement;

(b) Weis Builders is or is not bound by the JGC Award; and

(c) Local 150 has or does not have the "right to strike and picket" Weis Builders jobs until the "failure to pay" the Award "has been corrected."

**ANSWER: Local 150 denies the allegations contained in paragraph 24.**

**COUNT I**
**PETITION TO VACATE JOINT GRIEVANCE COMMITTEE AWARD**

25. Weis Builders incorporates by reference and realleges each and every allegation contained in Paragraphs 1 through 24 set forth above, as if fully set forth herein.

**ANSWER: Local 150 incorporates its answers to paragraphs 1 through 24 of the Complaint.**

26. In *J.W. Peters Inc. v. Bridge, Structural and Reinforcing Iron Workers, Local Union 1,* 398 F. 3d 967 (7th Cir. 2005) the Court of Appeals held that an employer can terminate its labor agreement mid-term pursuant to the one-person unit principle and that such termination also relieved the employer of any contractual obligation to arbitrate grievances. In relevant part, the court found as follows:

> Moreover, as a matter of common sense, it seems illogical to continue to bind Peters to a pre-hire agreement simply because it has no employees who could reject the Union as their bargaining representative in a Board-conducted election. We therefore conclude that if Peters in fact employed fewer than two employees during the relevant period, the company's unilateral repudiation of the contract would, as a matter of law, relieve it of its contractual obligation to arbitrate before the JAB. *Id.* at 975.

> **ANSWER: Local 150 denies the allegations contained in paragraph 26 as a conclusion of law.**

27. From 2008 to the current date, Weis Builders has not employed operating engineers and has no plans or intentions of employing operating engineers to perform work within the scope of work covered by the HHU Agreement.

**ANSWER: Local 150 denies the allegations contained in paragraph 27.**

28. The Notice of Termination issued by Weis Builders to Local 150 on December 4, 2008 effectively repudiated and terminated its then-existing labor agreement with Local 150 in accordance with the one-person unit principle as confirmed in *J.W. Peters* and the NLRB cases cited therein.

**ANSWER: Local 150 denies the allegations contained in paragraph 28.**

29. Local 150 did not file an unfair labor practice charge with the NLRB challenging Weis Builders' unlawful attempt to terminate its agreement with Local 150 in 2008, and has waived any claim that the HHU Agreement or MOU continued in place after that termination.

**ANSWER: Local 150 admits it did not file an unfair labor practice charge with the NLRB challenging Weis Builders' unlawful attempt to terminate its agreement with Local 150 in 2008, but denies each and every other allegation contained in paragraph 29. Local 150 states further no unfair labor practice charge was necessary because the CBA remained in effect.**

30. Weis Builders has not become signatory to any Local 150 agreements subsequent to that termination, and is not signatory to or bound to the agreement under which the underlying grievance was processed to the JGC.

**ANSWER: Local 150 denies the allegations contained in paragraph 30.**

31. Because Weis Builders lawfully terminated its HHU Agreement and MOU with Local 150 in 2008, it is not bound to the current HHU Agreement under which the JGC issued its Award. Weis Builders had no obligation to arbitrate the grievance filed by Local 150 and the JGC had no authority or jurisdiction to render its Award against Weis Builders.

**ANSWER: Local 150 denies the allegations contained in paragraph 31.**

## COUNT II
## DECLARATORY JUDGMENT

32. Weis Builders incorporates by reference and realleges each and every allegation contained in Paragraph 1 through 31 set forth above, as if fully set forth herein.

**ANSWER: Local 150 incorporates its answers to paragraphs 1 through 31 of the Complaint.**

33. Weis Builders has been informed by Local 150 that it is "entitled to [take] all legal and economic remedies" against Weis Builders to enforce the Award; that the matter has been forwarded to Local 150's attorneys; and Local 150's attorney has informed Weis Builders' Counsel that the Award is enforceable in favor of Local 150.

**ANSWER: Local 150 admits the allegations contained in paragraph 33.**

34. Enforcement of the Award and the HHU Agreement will cause imminent injury to Weis Builders in the form of economic damages imposed by the Award and the imposition of improper contractual obligations with respect to Local 150 under the current HHU Agreement.

**ANSWER: Local 150 denies the allegations contained in paragraph 34.**

35. Additionally, the Award exposes Weis Builders to strikes and picketing by Local 150, as threatened in its letter dated February 11, 2015 (Exhibit K). Local 150 has continued to take the position that the Award is binding on Weis Builders and that it (Local 150) can picket and strike Weis Builders absent payment thereof.

**ANSWER: Local 150 admits the allegations contained in paragraph 35.**

36. Weis Builders is seeking and is entitled to a declaration by this Court that it is not bound to the current HHU Agreement; that the Award is not binding on or enforceable against Weis Builders; and that Local 150 does not have the right under the HHU Agreement to strike or picket Weis Builders until the Award is paid by Weis Builders.

**ANSWER: Local 150 denies the allegations contained in paragraph 36.**

## AFFIRMATIVE DEFENSES

### Affirmative Defense No. 1

Plaintiff/Counter-Defendant waived its claims that the JGC award and the agreement between the parties are unenforceable because Weis Builders failed to properly terminate the agreement between the parties.

### Affirmative Defense No. 2

Plaintiff/Counter-Defendant had no right to terminate the agreement because it was not entitled to application of the one-man unit rule.

### Affirmative Defense No. 3

Plaintiff/Counter-Defendant waived its defenses to enforcement of the agreement because it failed to pursue these claims before the JGC.

## COUNTERCLAIM

Respondent/Counter-Plaintiff, the International Union of Operating Engineers, Local 150, AFL-CIO ("Local 150"), by and through its attorneys, presents this counterclaim pursuant to Rule 13

of the Federal Rules of Civil Procedure against the Plaintiff/Counter Defendant, Weis Builders, Inc. ("Weis Builders").

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §185 because the dispute arises under Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. §185.

2. Venue is proper in this Court because a substantial portion of the events as issued occurred in the Northern District of Illinois.

3. Local 150 is a labor organization representing employees in an industry affecting commerce within the meaning of Section 2(5), (6) and (7) of the National Labor Relations Act ("NLRA), 29 U.S.C. §§152(5), (6) and (7), and Section 301 of the LMRA, 29 U.S.C. §185. Its principal offices are located at 6200 Joliet Road, Countryside, Illinois, within the geographic jurisdiction of this Court.

4. Weis Builders is a corporation and an employer in an industry affecting commerce within the meaning of Section 2(2), (6) and (7) of the NLRA, 29 U.S.C. §§ 152(2), (6) and (7) and Section 301 of the LMRA, 29 U.S.C. § 185. Weis Builder's principal office is located in Minneapolis, Minnesota.

5. On or about August 14, 2000, Weis Builders signed a memorandum binding it to the Heavy Highway and Underground Agreement ("HHU Agreement") and any successor agreements, such as the HHU Agreement effective June 1, 2007 through May 31, 2010 ("2007 HHU Agreement"), and the HHU agreement effective June 1, 2010 through May 31, 2010, extended through May 31, 2017 ("2010 HHU Agreement"). True and correct copies of the memorandum, the 2007 HHU Agreement, and the 2010 HHU Agreement are attached as Exhibits A, B, and C.

6. Article XIII Section I of the 2007 HHU Agreement and the 2007 HHU Agreement entitled "GRIEVANCES AND ARBITRATION" states as follows (Exs: B at 41-44, C at 33-35):

**ARTICLE XIII**
**SECTION 1 – GRIEVANCES AND ARBITRATION**

For the purpose of this Agreement, the term "grievance" is any claim or dispute involving an interpretation or application of the Agreement by an employee, or an Employer, or the Union, or the Association that one of the other of the aforesaid persons or organization is violating or has violated this Agreement.

**STEP 1**. A grievance shall first be taken up between the Union's Business Representative assigned to the job and a designated representative of the Employer. The Union must file the grievance within forty-five (45) days of the date of occurrence giving rise to the grievance or when the affected employee knew or reasonably should have known of the existence of the grievance. Grievances not filed within the forty-five (45) day period are deemed waived and are not subject to being processed though this procedure.

The above forty-five (45) day limit may be waived for violations of Article III Section 1-Work Day Work Week, Eight Hour Guarantee, Show-up Pay, Call off and Prep Time. Also, Article III, Sections 2 and 3. The liability shall be for three (3) years of the violation, verified by audit. Audit fees shall be paid for by the Company, along with a ten percent (10%) penalty payable to the Union.

**STEP 2**. In the event the grievance cannot be resolved within seven (7) working days of the STEP ONE conference, it shall be reduced to writing and referred for conference and resolution by designated officials of the Union and the Contractor at a pre-grievance hearing to be held at the office of Local 150, 6200 Joliet Road, Countryside, Illinois, unless another location is mutually agreed to.

**STEP 3**. In the event the grievance cannot be resolved by STEP TWO, the written grievance shall be submitted within fifteen (15) days to the Joint Grievance Committee created in this Article.

The Union and Association have together created a Joint Grievance Committee to resolve grievances arising under this Agreement. This Committee shall consist of an equal number of members representing Employers and the Union. The Union or Association may appoint alternate members. The Joint Grievance Committee may adopt procedural rules which shall be binding upon all parties to the JGC proceedings.

The Joint Grievance Committee shall have the power to resolve all grievances before it and shall have the right to examine all records of the Employers and employees as is reasonably necessary to resolve the grievance. The Joint Grievance Committee shall have the authority to determine and assess remedies for violations of this Agreement, including, but not limited to an award of back pay and equivalent benefits to the Local 150 Assistance Fund.

Where the Joint Grievance Committee, by majority vote, resolves a grievance, no appeal may be taken and such resolution shall be final and binding on all parties and individuals bound by this Agreement.

If the Joint Grievance Committee is unable to resolve a grievance by majority vote, the grievance may be submitted within thirty (30) days to a neutral arbitrator. If the Union and the Association or the Employer, as the case may be, cannot agree on an arbitrator, then an arbitrator shall be selected in accordance with the rules and procedures of the American Arbitration Association. The cost of such arbitrator shall be borne equally by both parties to the arbitration, and the decision of the arbitrator shall be final and binding on all parties and individuals bound by this Agreement.

The time limits provided in this Section may be extended by mutual written consent of the Union and the Association and/or the Employer or at the discretion of the Joint Grievance Committee.

Neither the Joint Grievance Committee nor an arbitrator shall have any authority to add to, detract from, or in any way alter the provisions of this Agreement or make a new Agreement.

Decision of the Joint Grievance Committee and Arbitration Awards shall be complied with within seven (7) days of receipt of the decision by the losing party. A party which fails to comply with the seven (7) day period shall be required to pay an additional ten percent (10%) of the amounts as owed as liquidated damages for failure to comply with the decision or award. In the event the prevailing party is required to file suit to enforce the decision or award, and it prevails, it shall be entitled to recover its costs, including attorney's fees, from the losing party.

There shall be no lockout by an Employer during the term of this Agreement.

Except as provided in Article XX, Sections 1 and 2 and 4 of this Agreement, there shall be no strikes or work stoppages by the Union during the term of this Agreement.

7. On or about January 21, 2015, after conducting a hearing into Grievance 14-1-140 brought by Local 150 against Weis Builders, the Joint Grievance Committee ("JGC") awarded the Local 150 Assistance Fund a total of $10,908.92. By letter dated January 22, 2015, the JGC informed Weis Builders of its decision and award. A true and correct copy of the decision and award is attached as Exhibit D.

8. Despite repeated demands by Local 150, Weis Builders has failed and refused to comply with the JGC award.

9. Weis Builders failed to comply with the JGC award within seven (7) days. Therefore, pursuant to Step Three of the contractual grievance procedure, Weis Builders is required to pay an additional ten (10%) of all amounts owed as liquated damages for its failure to comply with the decision or award.

10. In addition, Weis Builders must, pursuant to Step Three of the HHU Agreement, pay the attorney's fees and costs of Local 150 incurred due to the necessity of pursuing this action.

WHEREFORE, Local 150 prays that the Court enter an order:

A. Enforcing the JGC award finding Weis Builders in violation of the HHU Agreement;

B. Compelling Weis Builders to pay Local 150 the specified lost wages and benefits, and ten (10%) liquidated damages, for violations of the HHU Agreement;

C. Awarding Local 150 its costs and attorney's fees for this action; and

D. Awarding such other relief as the Court deems just and proper.

Dated: June 3, 2015 Respectfully submitted,

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, AFL-CIO LEGAL DEPARTMENT

By:

s/DALE D. PIERSON

One of the Attorneys for Local 150

Attorneys for Local 150:
Dale D. Pierson
Brad H. Russell
IUOE Local 150 Legal Dept.
6140 Joliet Road
Countryside, IL 60525
Ph: (708) 579-6663
Fx.: (708) 588-1647
dpierson@local150.org
brussell@local150.org

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing **UNION'S ANSWER AND COUNTERCLAIM** was sent on June 3, 2015, to the following individuals by electronic service through the Court's CM/ECF system:

Mr. Richard L. Samson
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
155 North Wacker Drive – Suite 4300
Chicago, IL 60606
Ph: (312)558-1220
E-Mail: richard.samson@ogletreedeakins.com

s/Dale D. Pierson
One of the Attorneys for Local 150

Dale D. Pierson
Brad H. Russell
IUOE Local 150 Legal Dept.
6140 Joliet Road
Countryside, IL 60525
Ph: (708) 579-6663
Fx.: (708) 588-1647
dpierson@local150.org
brussell@local150.org